NOT DESIGNATED FOR PUBLICATION

No. 121,350

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LARA D. VAN ASTEN,
*Appellee*,

v.

BRIAN A. VAN ASTEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed November 25, 2020. Affirmed.

*Joseph W. Booth*, of Lenexa, and *Janine D. Hassler*, of Olathe, for appellant.

*Ronald P. Wood*, of Clyde & Wood, L.L.C., of Overland Park, for appellee.

Before SCHROEDER, P.J., GREEN and BUSER, JJ.

PER CURIAM: Lara D. Van Asten and Brian A. Van Asten have married each other three times over the span of about 19 years. In 2017, Lara petitioned for the third divorce—the subject of this appeal. Following a trial, the district court ordered an equal property division that required Brian to pay an equalization payment of $28,084 to Lara. Brian was also ordered to pay spousal maintenance of $914 per month for 35 months.

Brian appeals, contending the district court abused its discretion by making an error of law interpreting *In re Marriage of Allen and Allen*, 31 Kan. App. 2d 31, 59 P.3d

1

1030 (2002). According to Brian, this error resulted in an inequitable distribution of marital property and a longer than appropriate spousal maintenance award. In response, Lara claims the district court did not err in following Kansas statutory and caselaw precedent—including *In re Marriage of Allen*—and did not abuse its discretion in dividing the marital property and awarding her 35 months of spousal maintenance.

Upon our review, we find no reversible error and affirm the district court's judgment. Additionally, we deny Brian's motion for appellate attorney fees and grant Lara's motion for appellate attorney fees in the amount of $3,870.

FACTUAL AND PROCEDURAL BACKGROUND

Lara and Brian have married each other three times. They began living together in August 1998, married in May 2001, had a child in 2003, and divorced in June 2004. Although the couple divorced, they did not separate but were remarried in May 2005. Lara and Brian divorced for a second time in June 2011 and a little over a year later, in September 2012, the couple resumed cohabitating in a marital-like relationship. The parties remarried for a third time in August 2013. Lara filed this divorce action in October 2017.

Relevant to this appeal, the couple entered into a property settlement agreement (agreement) as part of the first divorce proceeding. The 2004 agreement, which was incorporated into the divorce decree, did not provide for payment of spousal maintenance. On the other hand, the 2011 agreement, which was also incorporated in the divorce decree, explicitly waived any spousal maintenance. The 2004 and 2011 agreements and divorce decrees did not include any language indicating the couple intended for the respective agreements to remain in effect upon remarriage.

2

Prior to the third divorce trial, the couple stipulated to a parenting plan, most of the property valuations, incomes, and child support. The couple also stipulated that Brian would pay $914 per month in spousal maintenance to Lara but the "duration of maintenance shall be decided [by the district court]." In summary, the couple asked the district court to resolve two contested issues—the division of their property and the duration, if any, of spousal maintenance to be paid to Lara.

In advance of trial, Lara filed a pretrial brief attaching the prior agreements and divorce decrees. In relevant part, Lara sought a division of property that resulted in Brian paying an equalization payment of $66,722.50. Additionally, noting that the couple had been married for a total of 16 years, Lara sought spousal maintenance for 65 months.

Brian also filed a pretrial brief. He argued:

> "[T]wo previous divorces of the parties made final disposition of the parties['] property. The property awarded them in each of the previous divorces became their separate property as a single person. Any property they purchased as single persons remains their separate property. Only the property acquired during the period of the third marriage should be divided equitably between the parties."

Regarding spousal maintenance, Brian asserted that no support should be ordered because "[m]aintenance was waived in the two previous divorces and considered fair and equitable to the court when it adopted the parties['] property settlement agreement. Equity must apply to both parties."

The one-day trial began on January 16, 2019. Lara and Brian were the only witnesses. Considerable evidence was presented by stipulations. The trial evidence established that the couple had been married to each other or cohabitated in a marital-like relationship for about 19 years. Their latest marriage lasted four years. Their two prior divorces ended in divorce decrees which incorporated the 2004 and 2007 agreements.

3

Lara is 50 years old and earns $48,000 per year. Brian is 45 years old and earns an annual income of $132,000 with bonuses. The couple has a daughter who is a sophomore attending high school in Louisburg and is living with Lara. Prior to trial, the couple agreed that Brian would pay child support to Lara in the amount of $510 per month.

On April 26, 2019, after considering the pretrial briefs, the parties' arguments, and testimonial and documentary evidence, the district court filed a detailed 14-page journal entry of divorce. Regarding the couple's real and personal property, the district court divided the assets and debts equally. Additionally, it made the following findings relating to the division of property:

- All the parties' assets and debts comprised the marital estate.
- The parties' marital residence was part of the marital estate. In keeping with the positions of both parties, the district court awarded the residential property, mortgage, and debts to Brian.
- The parties were "awarded the personal property in their possession, except as specifically addressed." Lara was awarded two vehicles and assigned the corresponding debts. She was also awarded her engagement ring, wedding ring, and a piano. Brian was awarded three vehicles and assigned the corresponding debts. Brian was also awarded various other property, including a trailer, two boats, a 4-wheeler, and his wedding ring.
- The parties were awarded their personal bank accounts and personal stock and retirement accounts.
- The net value of Lara's marital assets less her debts totaled $17,519. The net value of Brian's marital assets less his debts totaled $73,678. In order to divide the property equally, the district court ordered Brian to make an equalization payment to Lara of $28,084.

4

Regarding spousal maintenance, the district court ruled:

- The waivers of maintenance in the prior divorces had no effect in this divorce action because "the language in the two prior decrees failed to include specific language indicating the parties intended for the agreement to remain in effect if the parties remarried each other." See *In re Marriage of Allen*, 31 Kan. App. 2d at 36.
- "[U]nder the circumstances presented in this action, equity dictates that the term for payment of maintenance should be reduced from the maintenance term otherwise imposed for a continuous, single marriage of this duration."
- The district court did not award 71 months of maintenance as requested by Lara based on the combined length of her three marriages to Brian but ordered him to pay maintenance for 35 months less the 17 months of temporary support payments previously paid.

Brian appeals.

### DIVISION OF PROPERTY

On appeal, Brian contends the district court abused its discretion when it made an error of law interpreting *In re Marriage of Allen* as creating a different legal standard for divorce actions where parties have remarried each other. He contends that "[a]n appropriate reading of the [*In re Marriage of*] *Allen* case is that the court is not bound by the earlier Separation Agreement and Decree, but, that a property settlement agreement from a previous divorce defines the property that each party brings to a remarriage." For her part, Lara asserts the district court properly applied Kansas statutes and the *In re Marriage of Allen* precedent to the facts of this case.

A district court's division of property in a divorce action is governed by K.S.A. 2019 Supp. 23-2801 et seq. A district court has broad discretion when adjusting the

5

property rights of the parties involved in a divorce action. As a result, the district court's property division "will not be disturbed on appeal absent a clear showing the court abused that [broad] discretion." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010) (citing *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 [2002]). Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Lara and Brian agree that K.S.A. 2019 Supp. 23-2802 governs the division of property in divorce actions. Under K.S.A. 2019 Supp. 23-2802(c), a district court shall consider 10 factors when determining the division of property:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property."

Brian argues, however, that the district court misread *In re Marriage of Allen* as controlling and "abandon[ed] the analysis required by [K.S.A. 2019 Supp. 23-2802] including the length of the marriage; time source and manner of acquisition of property." As a consequence, according to Brian: "The court divided all property in the marital estate without regard to the duration of the most recent marriage. This ignored any premarital ownership from the second divorce."

Because the district court and parties have referenced *In re Marriage of Allen*, we briefly summarize the facts of the case and its legal precedent. Diane and Robert Allen were first married in March 1993. Upon their divorce in August 1998, the divorce decree

incorporated a property settlement agreement. In March 1999, the couple remarried but about three months later, in June 1999, a divorce petition was filed. In the second divorce proceeding, Diane argued that the property settlement from the first divorce should govern the property disposition for the second divorce. Robert disagreed, asserting that the property settlement agreement was abrogated by the remarriage and had no force and effect regarding the division of property in the second divorce proceeding. The district court agreed with Robert and proceeded to divide the couple's property.

On appeal, Diane contended that the district court erred in ruling that the property settlement from the couple's first divorce was not binding on the court upon the couple's remarriage and divorce. Similarly, our court framed the question on appeal as whether the settlement agreement was binding on the district court in a subsequent divorce proceeding between the same parties after they have remarried.

After considering Kansas statutes and caselaw, our court affirmed the district court and concluded:

> "Absent specific language in a property settlement agreement, which is entered into in contemplation of divorce and incorporated into the divorce decree, indicating the parties intended for the agreement to remain in effect if the parties remarry each other, the agreement will cease to be effective upon remarriage except to define what property each brings into the subsequent marriage." 31 Kan. App. 2d 31, Syl. ¶ 3.

See also *Stuckey v. Stuckey*, No. 96,186, 2007 WL 3146680, at *3 (Kan. App. 2007) (unpublished opinion) (citing *In re Marriage of Allen* for the proposition that absent clear and unambiguous language that the settlement agreement continued to be in effect even if the parties remarried and divorced again, the agreement only helped define the property that each brought into the second marriage but the trial court "was not required to set aside all that property to her and divide the balance").

Returning to the case on appeal, in its order the district court summarized Brian's argument that "the parties' marital property subject to division consists only of the property acquired during the parties' final marriage (and any marital interest acquired during that time)." But the district court, relying on *In re Marriage of Allen*, rejected Brian's legal contention:

"At the trial of [*In re Marriage of*] *Allen*, . . . District Court Judge James J. Smith rejected the Husband's argument that a prior property settlement agreement from the prior divorce action controlled the issue of which assets were extra-marital. Judge Smith's division of all the parties' debts and assets without regard to the prior property settlement agreement was upheld by the Court of Appeals.

"This Court applies the [*In re Marriage of*] *Allen* ruling to the instant action as follows:  Consistent with the Court of Appeals affirmance of Judge Smith's trial decision, this Court rules that all of the parties' debts and assets comprise the marital estates."

We find no error in the district court's understanding and application of *In re Marriage of Allen*. This opinion states that prior property settlement agreements do not constrain the district court's distribution of property in a subsequent remarriage and divorce. Moreover, the district court's treatment of the marital property was consonant with K.S.A. 2019 Supp. 23-2801 which provides that upon the filing of a divorce petition all property shall become marital property for purposes of division.

Additionally, Brian's argument on appeal is at variance with his closing argument at trial which downplayed the importance of *In re Marriage of Allen* regarding the division of property:

"*I'm not sure why the* [*In re Marriage of*] *Allen case is so pertinent here* other than with respect to maintenance because it also says in here that it does define the property that each party brings into the next, the remarriage. So [*In re Marriage of Allen*] does recognize that each party was awarded as their separate property in that divorce and that's what they bring into the third marriage. So with respect to the property division, it

8

does recognize it. Now, because of our statute, was it K.S.A. 23-2801, which says that magically when you file for divorce, everything can be considered marital and we recognize that and we've also got the statute [K.S.A.] 23-201, which says a person's separate property remains their separate property. So it looks like there's a conflict here on these, *but I think the idea is that using its equitable powers, the Court can determine to award property differently than what people bring in in order to get an equitable distribution.*" (Emphases added.)

We are persuaded that the district court and Brian's trial counsel properly understood that *In re Marriage of Allen* read in conjunction with K.S.A. 2019 Supp. 23-2801, provides that while the prior agreement defined the separate property the couple brought into the third marriage, upon the filing of the third divorce petition all of the property was considered marital property subject to division by the district court using its broad equitable powers.

Additionally, while Brian claims the district court "abandon[ed] the analysis required by [K.S.A. 2019 Supp. 23-2802] including the length of the marriage; time source and manner of the acquisition of property," we find this assertion contrary to the facts referenced in the district court's order.

In its order, the district court stated that it considered "an expansive quantity of personal property and its valuation." In its findings, the district court referenced many of the factors listed in K.S.A. 2019 Supp. 23-2802. For example, the age of the parties (Lara 50 years old, and Brian 45 years old); duration of the marriage (third marriage lasted 4 years); property owned by the parties (considerable property owned and valued by stipulation with the district court awarding Brian a majority of the personal property in dispute); present and future earning capacities (Lara earning $3,929 per month and Brian earning $9,333 per month.). The district court concluded:  "The parties also have disparate future earning capacities with [Brian's] capacity greatly exceeding [Lara's] capacity." The district court further considered the time, source, and manner of the

9

acquisition of property (marital residence awarded to Brian as suggested by the parties; and three pages detailing the ownership of personal property and financial accounts some of which by stipulation); family ties and obligations (teenage daughter living with Lara in a Louisburg residence); and the allowance of maintenance (discussed in the next section). In summary, the record supports the conclusion that the district court faithfully considered the factors listed in K.S.A. 2019 Supp. 23-2802 in its division of property.

As Brian candidly concedes on appeal: "It is well established that our District Courts enjoy broad discretion when it comes to their determination of what is an equitable division of assets and debts." For that reason, the district court's property division "will not be disturbed on appeal absent a clear showing the court abused that [broad] discretion." *Vandenberg*, 43 Kan. App. 2d at 715. Brian has failed to establish an error of law. Upon our review of the record, we are convinced the district court properly applied Kansas statutes and *In re Marriage of Allen* in dividing the parties' property.

SPOUSAL MAINTENANCE

On appeal, Brian contends the district court's ruling regarding spousal maintenance misinterpreted the *In re Marriage of Allen* opinion "to hold that the court was required to account for the duration of both initial cohabitating and previous marriages between two parties (despite their prior divorce), in determining the base figure of time upon which the duration of maintenance payments should occur."

In its journal entry of divorce the district court summarized Lara and Brian's different views of spousal maintenance as presented at trial:

> "[Lara] argues that the parties began to cohabitate in August, 1998, were first married May 12, 2001, and that they had been married for a total of 16 years. [Lara] urges maintenance to be paid for 65 months pursuant to the Shawnee County Guidelines. [Brian] argues that no maintenance should be payable based upon the length of the

10

parties' third and most recent marriage. . . . He reasons that the prior divorce actions, which contained waivers of spousal maintenance, should not be disturbed."

The district court acknowledged that "[t]he issues of whether spousal maintenance should be payable and, if so, for what duration; are impacted by the previously cited decision in [*In re Marriage of Allen*]." In particular, the district court stated:

> "'Any part of a settlement agreement which remains executory at the time divorced parties remarry each other is unenforceable absent evidence that the parties intended for the agreement to indicate they intended for the first agreement to act as a prenuptial agreement should they remarry.'" [*In re Marriage of Allen*, 31 Kan. App. 2d 31, syl. ¶ 4].
>
> "[*T*]here is no language in the parties' prior divorce decrees indicating that the mutual waivers of spousal maintenance should be enforceable in this divorce action." (Emphasis added.)

As a result, in compliance with *In re Marriage of Allen*, the district court ruled: "The parties' two prior waivers of spousal maintenance are of no effect in this divorce action as the language in the two prior decrees failed to include specific language indicating the parties intended for the agreement to remain in effect if the parties remarried each other."

The district court found that the parties had cohabitated in a marital-like relationship for a total of 215 months which, under Lara's theory, and applying the Shawnee County Guidelines, would have resulted in an order to pay 71 months of maintenance. However, the district court rejected Lara's request to base the spousal maintenance award on the lengthy duration of the couple's prior marriages and cohabitations. On the contrary, the district court ruled that "under the circumstances presented in this action, equity dictates that the term for payment of maintenance should be reduced from the maintenance term otherwise imposed for a continuous single

11

marriage of this duration." Accordingly, the district court stated it would "halve the 71 month[s] of maintenance payable (considering the entirety of the relationship) to 35 months." The district court also gave Brian credit for 17 months of temporary maintenance previously paid, resulting in an order that Brian pay 18 months of maintenance to Lara in the future.

Appellate courts generally review a district court's spousal maintenance award for abuse of discretion and should uphold the court's findings if they are supported by substantial competent evidence. *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 706-07; *In re Marriage of Hair*, 40 Kan. App. 2d 475, 486, 193 P.3d 504 (2008). An award of spousal maintenance is governed by K.S.A. 23-2901 et seq. Under K.S.A. 2019 Supp. 23-2902(a), a court may grant maintenance to either spouse "in an amount the court finds to be fair, just and equitable under all of the circumstances."

Brian's legal argument regarding spousal maintenance has evolved since the trial. As the district court noted, Brian's initial claim was that since no maintenance was awarded Lara in the first divorce and she waived maintenance in the second divorce, she was not entitled to any maintenance in the third divorce. Indeed, in his pretrial brief, Brian argued that "[m]aintenance was waived in the two previous divorces and considered fair and equitable to the court when it adopted the parties['] property settlement agreement. Equity must apply to both parties."

In our view, the district court, citing *In re Marriage of Allen*, 31 Kan. App. 2d 31, Syl. ¶ 4, appropriately denied Brian's main trial argument that since Lara agreed not to claim spousal maintenance in the first two agreements she was foreclosed from seeking maintenance in the third divorce proceeding. We find the district court's understanding and application of *In re Marriage of Allen* under these circumstances is without error.

On appeal, however, Brian does not reprise the principal argument he raised at trial. Rather, he focuses on the alternative argument that the district court erred as a matter of law in predicating its spousal maintenance award on the lengthy duration of the couple's three marriages, rather than simply basing the award on the four-year duration of the couples' last marriage.

In his pretrial brief, however, Brian conceded that "[t]here is no case precisely on point with respect to the question of how remarriage to the same person might impact the calculation of maintenance." We agree. It is also apparent that the district court did not base its award of spousal maintenance on the couple's 19-year relationship or it would have awarded Lara 71 months of spousal maintenance. Rather, consonant with Kansas statutes and caselaw, the district court appropriately considered multiple factors in its maintenance award.

Our court has set forth factors that a district court may consider in determining the amount of a spousal maintenance award. The factors include:  (1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner of acquisition of the property; (7) family ties and obligations; and (8) the parties' overall financial situation. *In re Marriage of Hair*, 40 Kan. App. 2d at 484.

We pause to note that in addition to Brian's claim that the district court erred in its interpretation of *In re Marriage of Allen*, he asserts the district court also erred as a matter of law in citing to *In re Marriage of Kuzanek*, 32 Kan. App. 2d 329, 82 P.3d 528 (2004), which was reversed by our Supreme Court in *In re Marriage of Kuzanek*, 279 Kan. 156, 105 P.3d 1253 (2005). While we acknowledge that the district court mistakenly cited to this case, it is important to point out that the district court properly cited to *In re Marriage of Hair* and, most importantly, applied the numerous factors listed in *In re Marriage of Hair* in formulating its maintenance ruling. As a result, we find any error in

13

the district court's mistaken citation to our court's opinion in *In re Marriage of Kuzanek* is harmless.

As we summarized in the previous section, the district court's journal entry memorialized its specific factual findings regarding the various factors relevant to both the property division and spousal maintenance. These findings—separate from any consideration of the length of the latest marriage or last three marriages combined—are well supported by the record on appeal. For example, Lara testified regarding her need for maintenance. According to her, she required $1,000 per month in maintenance in order to meet her expenses. She expressed a desire to live in Louisburg until the couple's daughter graduates from high school. According to Lara, "the rent is $1,100 a month and when I'm finished paying the rent, the utilities, my car payment and gas to get back from work, there's nothing left." She testified, "I can't afford to live in that house with [my daughter] until she's out of high school without [maintenance]." Notably, the daughter will graduate from high school in 2021.

Although Lara's counsel argued for maintenance based on the entirety of the couple's 19-year relationship, he acknowledged that an appropriate award could be more modest:

> "Showing what the [domestic relations affidavit] shows, [Lara's] $1,000 in the hole, behind. She needs the money because of what the [domestic relations affidavit] shows. We went through that testimony on how she's short of money. . . . And I think there is a case of need. The need is that she needs that money. . . . [W]e think the maintenance should continue to the full amount of time. You know, maybe if we got it to the time that [the daughter] graduated from high school might be a good, somewhere in between equitable amount to do, and then at that point we wouldn't have child support, we wouldn't have—and having maintenance maybe dovetail with that."

For his part, Brian contested Lara's need for maintenance, claiming that the house she was renting was larger than necessary and that Lara spent too much money on entertainment expenses. Brian asserted that certain support guidelines and caselaw "calculate that generally a third of the years the parties were married will be the length of time for maintenance. Under the current marriage of 4 years maintenance could be for 16 months." While Brian argued to the district court that "[t]here are no equitable grounds for extending the duration of maintenance," beyond that time period, he conceded that "[t]he only basis [Lara] may have for extending maintenance in this case is equitable."

In the end, the district court rejected Lara's argument for 71 months of spousal maintenance based on the duration of the three marriages, and Brian's central argument that, consistent with the two prior agreements, he should not be required to pay any maintenance. As to the parties' alternative arguments made below, the district court was presented with Lara's concession of needing at least 29 months of maintenance—until the daughter's graduation in the summer of 2021—and Brian's acknowledgement that an award of 16 months would be appropriate.

Under these circumstances, and given the arguments presented to the district court, we find no legal or factual impropriety with the district court's exercise of discretion in awarding Lara 35 months of maintenance—of which only 18 months of payments remained to be paid.

In finding no abuse of discretion in the amount of spousal maintenance awarded in this divorce, we highlight that our court has affirmed similar maintenance awards for marriages of about four years in duration. For example, in *In re Marriage of Dickson*, No. 111,504, 2014 WL 5313773, at *1 (Kan. App. 2014) (unpublished opinion), this court affirmed a spousal maintenance award of $1,300 per month for 36 months relating to a 5-year marriage. Moreover, we have approved a maintenance award for a much longer period of time for a marriage of three years in duration. See also *In re Marriage of*

15

*Schmidt*, No. 104,582, 2011 WL 2637456, at *1 and 5 (Kan. App. 2011) (unpublished opinion) (awarding spousal maintenance of $265 per month for 121 months relating to a 3-year marriage).

The bottom line: Given the considerable discretion afforded district courts in awarding spousal maintenance, we do not find that the district court's award was based on an error of law. The district court specifically rejected Lara's assertion that *In re Marriage of Allen* mandated maintenance based on 19 years of combined marriages. Moreover, it is apparent that the district court followed our admonition in *In re Marriage of Hair* that a district court "should not award maintenance *on one single factor* without considering all other factors, such as the parties' circumstances, future income, and need." (Emphasis added.) 40 Kan. App. 2d at 484-85. Finally, the district court's award was within the broad parameters of other spousal maintenance awards affirmed by our court based on marriages of three to five years in length. We find no error.

## APPELLATE ATTORNEY FEES

After oral arguments, Lara and Brian filed motions and affidavits seeking appellate attorney fees under Supreme Court Rule 7.07(b) (2020 Kan. S. Ct. R. 50). Upon our review, the motions and affidavits complied with the requirements of Rule 7.07(b)(2) and Supreme Court Rule 1.5 (2020 Kan. S. Ct. R. 297) of the Kansas Rules of Professional Conduct relating to attorney fees. Neither party filed a response to the other party's motion for attorney fees.

Supreme Court Rule 7.07(b)(1) generally provides that an appellate court "may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Additionally, our Supreme Court has stated that "Rule 7.07(b) applies to all requests for attorney fees related to an appeal, whether authorized under . . . [a] statute, or by an agreement between the parties." *Snider v. American Family*

16

*Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Both Lara and Brian correctly assert that K.S.A. 2019 Supp. 23-2715 authorizes our court to award attorney fees related to a domestic relations appeal when appropriate. In particular, the statute permits the award of attorney fees "as justice and equity require." K.S.A. 2019 Supp. 23-2715.

Regarding Brian's motion, we deny the request because he was not the prevailing party in the litigation. "With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his or her favor at the conclusion of the entire case." *Curo Enterprises v. Dunes Residential Services, Inc.*, 51 Kan. App. 2d 77, Syl. ¶ 6, 342 P.3d 948 (2015).

Regarding Lara's motion, we grant the request because she was the prevailing party in the litigation and, in our opinion, "justice and equity require" it. K.S.A. 2019 Supp. 23-2715. Brian is ordered to pay Lara's appellate attorney fees in the amount of $3,870.

Affirmed.